UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
ZACHARY NESBITT,                )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil Action No. 00-1685 (RWR)
                                )
RICK WOMBLE, *et al.*,          )
                                )
          Defendants.           )
_____ )

### MEMORANDUM OPINION AND ORDER

Plaintiff Zachary Nesbitt, an employee of the Federal Deposit Insurance Corporation ("FDIC"), brings this action for damages under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narc., 403 U.S. 388 (1971), alleging that FDIC employees violated his Fourth and Fifth Amendment rights by forcing him to undergo urinalysis testing in the absence of any reasonable suspicion of illegal drug use and without any drug testing policy. The FDIC employees have moved to dismiss invoking qualified immunity and alleging improperly named defendants, unavailability of a Bivens remedy, and insufficient service of process. Because the facts alleged by the plaintiff, if true, constitute a knowing violation of clearly established law under the Fourth Amendment that is redressable under Bivens, defendants' motion to dismiss will be denied as to defendants Rick Womble and Dwight Wilson. Because the plaintiff has failed to allege facts showing that the other defendants have violated

- 2 -

his Fourth or Fifth Amendment rights, defendants' motion to dismiss will be granted as to those remaining defendants. Because the defendants waived service of process, their motion to dismiss for insufficient service of process will be denied.

BACKGROUND

Nesbitt is employed as a Motor Vehicle Operator (chauffeur) at the FDIC, and is assigned to transport the Chairman of the corporation. (See Complaint ("Compl.") ¶ 8.)  In June 1997, he was detailed to the supervisory position of Acting Foreman of the Motor Vehicle Operators, where his first and second line supervisors were Wilson and Womble, respectively. (Id. ¶¶ 10, 11, 24.)  Throughout the summer of 1998, Nesbitt met with various FDIC officials concerning their failure to give him a pay raise and promotion commensurate with his management duties, as well as his union's opposition to Womble's plan to use an outside contractor to provide driving services for FDIC personnel. (Id. ¶¶ 25-28.)

On August 19, 1998, two days after Nesbitt notified his supervisors about his dissatisfaction with the form of a settlement he had been offered regarding his promotion and pay, Womble summoned Nesbitt.  Womble informed Nesbitt in the presence of defendant Bob Jacobs that he (Womble) had smelled marijuana smoke in the FDIC garage on July 17, 1998 near Nesbitt's office while Nesbitt was in his office, and that Wilson had smelled

- 3 -

marijuana smoke near Nesbitt's office while Nesbitt was in his office on August 17, 1998.[1]  (Id. ¶¶ 33-34, 40.)  Womble ordered Nesbitt to provide a urine sample that could be tested for illegal drug use.  Jacobs escorted Nesbitt to the testing site at the Department of the Interior.  (Id. ¶ 41.)  Defendants William Kmetz, Mary Laverty, Peggy Stokes and five John Does in Kmetz's supervisory chain had been told about the reports of the marijuana odor.  Laverty had sought and received legal approval from five John Does in the Office of General Counsel to have Nesbitt drug tested, a step with which Kmetz, defendants John Lynn and Jane Sartori and all the John Doe defendants had agreed. (Id. ¶¶ 18-20, 63-68.)  Defendant Michael Rubino later ratified the decision.  (Id. ¶ 71.)  After providing the sample, Nesbitt learned that his driving duties would be suspended while the test results were pending.  (Id. ¶ 43.)  Ultimately, Nesbitt tested negative for drugs.  (Id. ¶ 58.)

Nesbitt filed this action and served process upon an FDIC official rather than the defendants personally.  He served the defendants personally roughly five months after filing the complaint, and the defendants then signed waivers of service.

---

[1] Wilson admitted that he made his report at the urging of Womble, his direct supervisor.  (See Compl. ¶ 36.)  On September 16, 1998, Womble revised the date on which he claimed to have actually smelled the smoke to August 4, 1998.  Nesbitt claims that this change was made because Womble subsequently learned that Nesbitt was not at work on July 17, 1998.  (Id. ¶ 35.)

- 4 -

Nesbitt claims that allegations by Womble and Wilson that they smelled marijuana smoke near Nesbitt's work space did not provide reasonable suspicion to test him because (1) the specific area in which Womble detected the smell is a bathroom that is approximately 25-30 feet away from Nesbitt's workspace; (2) hundreds of employees have access to this area; (3) the safety rationale advanced by the defendants as a justification for testing was merely pretextual since Nesbitt safely drove the FDIC chair himself to Dulles airport on August 18, the day after Wilson allegedly smelled the marijuana and the day before Nesbitt was ordered to submit to testing; and (4) Womble and Wilson lied about smelling marijuana smoke in the garage on the dates in question.  (Id. ¶¶ 32, 47, 49, 52.)  In addition, Nesbitt argues that the defendants violated his right not to be deprived of liberty without due process by subjecting him to an unreasonable drug test in the absence of an employee drug testing program as required by Executive Order 12,564.  (Id. ¶¶ 5, 6, 21, 22.)

The defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, arguing that they are entitled to qualified immunity because the decision to order drug testing was based on reasonable suspicion, and that these defendants would not be liable for the Fifth Amendment violation Nesbitt alleges.  The defendants also argue that Nesbitt's exclusive remedy is under the Civil Service Reform Act ("CSRA"),

- 5 -

and seek dismissal under Rule 12(b)(5) because of insufficient service of process.

## DISCUSSION

I.   SUFFICIENCY OF PLED CLAIM

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When reviewing the sufficiency of a complaint under Rule 12(b)(6), a court should accept as true the well-pled factual allegations in the complaint.  See City of Los Angeles v. Preferred Commc'ns, Inc., 476 U.S. 488, 493 (1986); Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004); Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003); Ross v. Dep't of Corr., No. 06-593, 2006 U.S. Dist. LEXIS 82204, at *3 (D.D.C. Nov. 7, 2006) (citing Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)).  A plaintiff's factual allegations should be liberally construed and he must be given "every favorable inference that may be drawn from his allegations of fact."  Wiggins v. Philip Morris, Inc., 853 F. Supp. 470, 473 n.1 (D.D.C. 1994).

A.   Qualified Immunity and Employee Drug Testing

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not

- 6 -

violate clearly established statutory or constitutional rights of
which a reasonable person would have known.'"   Int'l Action Ctr.
v. United States, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified
immunity defense was developed in order to protect government
officials from the burden of having to defend lawsuits based on
insubstantial claims.  See Harlow, 457 U.S. at 818.  When
evaluating a claim of qualified immunity, "a court must first
determine whether the plaintiff has alleged the deprivation of an
actual constitutional right at all, and if so, proceed to
determine whether that right was clearly established at the time
of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290
(1999).  In order for the right to be clearly established, the
"contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing
violates that right."  Anderson v. Creighton, 483 U.S. 635, 640
(1987).  In resolving the immunity question, courts assume the
truth of the plaintiff's allegations in assessing whether the
official's conduct violated clearly established law.  See
Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

Nesbitt alleges that the defendants violated his Fourth
Amendment right to be free from unreasonable searches and
seizures because they ordered and conducted his urinalysis
testing without reasonable suspicion of drug use.  (See Compl.

- 7 -

¶ 78.)  In response, the defendants claim that they are entitled
to qualified immunity as officials who carried out discretionary
functions in connection with a testing order that was based on
reasonable suspicion of illegal drug use and a paramount safety
interest.

It is well established that a government drug test of its
employee constitutes a Fourth Amendment search.  See Skinner v.
Ry. Labor Executives' Ass'n, 489 U.S. 602, 617 (1989); see also
Am. Fed'n of Gov't Employees v. Cavazos, 721 F. Supp. 1361, 1371
(D.D.C. 1989).  These searches may be carried out on the basis of
reasonable suspicion or, if a special need exists, without a
finding of probable cause or individualized suspicion.  See
Skinner, 489 U.S. at 619.  It is clear, then, that Nesbitt's
urinalysis testing was a search, and that he has implicated a
constitutional right.  However, defendants assert that because
the search here was justified by a reasonable suspicion and a
special need, Nesbitt's right was not violated.

1.  Special need testing

The defendants assert entitlement to qualified immunity on
the ground that Nesbitt's duties justified having him drug tested
even in the absence of a reasonable suspicion that he was using
drugs.  The government may subject its employees to drug testing
without individualized suspicion of wrongdoing as long as there
exists a special need to test based on the government's safety

interests.  See id. at 620.  "[T]he permissibility of a
particular practice 'is judged by balancing its intrusion on the
individual's Fourth Amendment interests against its promotion of
legitimate governmental interests.'"  Id. at 619 (quoting
Delaware v. Prouse, 440 U.S. 648, 654 (1979)).  In the course of
performing such a balance, courts consider a number of factors,
such as the amount of discretion afforded the officials
responsible for ordering testing, the notice provided to
employees who may be subjected to testing, and the circumstances
under which the testing occurs.  See, e.g., id. at 622 (finding
the challenged drug testing policy reasonable given that it
occurred under narrowly defined circumstances, that the
individuals who administered the program had minimal discretion,
and that the employees undoubtedly had notice of the policy);
Piroglu v. Coleman, 25 F.3d 1098, 1103-04 (D.C. Cir. 1994)
(finding the random urinalysis testing reasonable because the
plaintiff knew of the policy, all individuals in plaintiff's
position were required to submit to drug testing, and such
uniformity limited the amount of discretion afforded to
officials); Nat'l Treasury Employees Union v. Von Raab, 489 U.S.
656, 667 (1989) (upholding suspicionless testing in part because
employees seeking to transfer to positions covered by the
regulations were aware of the testing policy, and because the

- 9 -

discretion of administering officials was appropriately restricted).

Due to his responsibilities for operating a motor vehicle, Nesbitt falls into a category of individuals for whom the government ordinarily will be able to articulate a safety rationale as a basis for testing.  See, e.g., Nat'l Treasury Employees Union v. Yeutter, 918 F.2d 968, 971 (D.C. Cir. 1990) ("'[O]bvious safety interests support the testing of the majority of . . . motor vehicle operators.'" (quoting Am. Fed. of Gov't Employees v. Skinner, 885 F.2d 884, 892 (D.C. Cir. 1989))). However, this rationale must still be balanced against the plaintiff's interest in privacy.  It is questionable whether the defendants' actions here satisfied that balancing test.

While there is no per se requirement that employers publish drug testing policies before carrying out special need testing, see Piroglu, 25 F.3d at 1103, none of the indicia of reasonableness found in Skinner, Von Raab, and Piroglu is present here.  Unlike the defendants in those cases, the defendants here have not shown that FDIC employees were aware that they might be subject to random testing.  The defendants note that the FDIC voluntarily submitted a drug testing plan to the Secretary of Health and Human Services in 1993, but also admit that the plan has yet to be implemented.  (See Mot. to Dism. at 14 (stating that the FDIC is currently in the process of drafting a policy to

implement the plan).)  Defendants' current drafting efforts do
not constitute notice.

Moreover, there is no indication here that the defendants'
discretion to order testing is appropriately circumscribed to
have prevented Nesbitt from being singled out inappropriately.
See, e.g., Piroglu, 25 F.3d at 1104 (noting that the District's
uniform testing practice ensured that plaintiff would not be
singled out for unannounced testing in the absence of individual
suspicion).  The absence of procedures here "carr[ies] the grave
potential for 'arbitrary and oppressive interference with the
privacy and personal security of [i]ndividuals,'" Von Raab, 489
U.S. at 672 n.2, a potential that the plaintiff alleges has been
met.  Suspicionless testing under these circumstances may have
been unreasonable and may not have qualified defendants for
qualified immunity.

2.  Reasonable suspicion testing

The defendants do claim, though, that the search was
justified because both Womble and Wilson smelled marijuana smoke
near Nesbitt's workspace on two days when he was in his office.
Nesbitt disputes the presence of any such marijuana odor and
alleges that Womble and Wilson fabricated their reports.  Taking
as true the allegations in the complaint, Womble and Wilson
fabricated the allegations which triggered drug testing, and in
so doing, caused Nesbitt to be deprived of his clearly

established constitutional right to be free from an unreasonable search. Therefore, at this stage of the litigation, Womble and Wilson will not gain the protection of the qualified immunity defense.

Nesbitt names in his complaint seven other defendants and fifteen John Doe defendants. All he says about them is that they heard the reports of the marijuana odor, or approved of or helped carry out or later ratified the testing. He fails, though, to allege acts by these other defendants that violated clearly established law. He does not allege that they knew Womble and Wilson lied, or that these remaining defendants knew of any facts that otherwise demonstrated that they acted in bad faith. At worst, he has alleged that these defendants relied on reports that on two separate occasions, two separate people smelled marijuana near the office of the FDIC chairman's chauffer while the chauffer was in his office. Such reliance on known co-workers' reported first-hand knowledge is both commonplace and reasonable. Cf. Garrison v. Dep't of Justice, 72 F.3d 1566, 1569 (D.C. Cir. 1996) (explaining that where the plaintiff's brother had informed defendants of plaintiff's illegal drug use, there was nothing about the plaintiff's relationship with his brother that would have made the information suspicious; the relationship enhanced the credibility of the information); L.A. Police Protective League v. Gates, 907 F.2d 879, 888 (9th Cir. 1990)

- 12 -

(finding that police officers who attempted to conduct an administrative search of a fellow officer's garage were shielded by qualified immunity in part because they sought and relied upon the advice of an Assistant City Attorney prior to their attempt to search).  Officials ordering drug testing based on a reasonable, articulable suspicion need rely on only the information before them when making that determination.  See Garrison, 72 F.3d at 1569.  Nesbitt's failure to plead any facts that would demonstrate no good faith reliance on co-workers' reported first-hand knowledge of reasonable suspicion sets forth no violation of a clearly established Fourth Amendment right and entitles these remaining defendants to qualified immunity.

    B.    Drug testing policy

    Nesbitt alleges that the defendants violated his Fifth Amendment right not to be deprived of liberty without due process by subjecting him to drug testing without first putting in place a policy for such testing in accordance with Executive Order 12,564.  (See Compl. ¶ 79.)  However, Nesbitt has failed to plead any facts or cite any supporting authority establishing that it was these defendants' duty, in their individual capacities, to create a drug testing plan for the FDIC in accordance with Executive Order 12,564.  Accordingly, Nesbitt's Fifth Amendment claim must be dismissed for failure to state a claim against these defendants.

- 13 -

C.   Availability of a *Bivens* remedy

The defendants also argue that Nesbitt is foreclosed from seeking relief under Bivens because Congress provided him with a remedy under the CSRA, and because the FDIC's grievance process, promulgated in accordance with the CSRA, also accords him a remedy.  (See Mot. to Dism. at 15-17.)  In Bivens, the Supreme Court refused to disallow a plaintiff to recover money damages after suffering a constitutional tort without an "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages . . ., but must instead be remitted to another remedy, equally effective in the view of Congress."  See Bivens, 403 U.S. at 397.  Thereafter, the Court began to restrict plaintiffs' remedies under the constitution by noting that the development of comprehensive statutory remedies might be the sole method by which particular harms could be redressed.  See, e.g., Bush v. Lucas, 462 U.S. 367 (1983) (allowing no damages for violation of a constitutional right where a civil service remedial system had been carefully constructed by Congress); Chappell v. Wallace, 462 U.S. 296 (1983) (refusing to provide damages to enlisted military personnel who alleged injuries sustained as a result of the unconstitutional actions of their superior officers given Congress' constitutional authority over the military justice system).  Courts have therefore been admonished to "withhold

- 14 -

their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve <u>Bivens</u> remedies." <u>Spagnola v. Mathis</u>, 859 F.2d 223, 228 (D.C. Cir. 1988) (interpreting <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988)).  Thus, when Congress has put in place a comprehensive remedial system, <u>Bivens</u> actions are precluded, even if such a result leaves a plaintiff with no remedy whatsoever. See <u>Spagnola</u>, 859 F.2d at 228-29.

At first blush, it might seem that Nesbitt could not recover under <u>Bivens</u> even if qualified immunity were defeated.  The D.C. Circuit has held that "[t]he CSRA provides remedies for any 'prohibited personnel practice.'"  <u>Weaver v. U.S. Info. Agency</u>, 87 F.3d 1429, 1432 (D.C. Cir. 1996).  However, certain actions by supervisors against federal employees, such as warrantless searches, are not defined as personnel actions within the CSRA's statutory scheme.  See <u>Bush</u>, 462 U.S. at 385 n.28; <u>see also</u> 5 U.S.C. § 2302.  Given that none of the adverse personnel actions described among the prohibited practices of the CSRA covers searches conducted without a warrant or without reasonable suspicion, no special factor counseling hesitation is present in this case.  The CSRA should not foreclose Nesbitt's <u>Bivens</u> action here.

- 15 -

II.  SUFFICIENCY OF SERVICE OF PROCESS

     The defendants have also moved, under Federal Rule of Civil
Procedure 12(b)(5), for dismissal for insufficient service of
process.  (See Mot. to Dism. at 19-21.)  When a federal employee
is sued in a Bivens action, he or she must be served in
accordance with the rules governing individual service.  See
Simpkins v. District of Columbia Gov't, 108 F.3d 366, 369 (D.C.
Cir. 1997).  When service has not been properly carried out, it
is proper to dismiss the complaint without prejudice.  See id. at
369; see also Fed. R. Civ. P. 4(m).  The defendants allege that
rather than serving these defendants personally, as Nesbitt was
required to do, he attempted to effect service of process by
delivering the summons and complaint to an FDIC official.  (See
Mot. to Dism. at 20.)

     Under Rule 4(m), if a defendant is not served within 120
days after the complaint is filed, a court must dismiss the
action without prejudice as to the unserved defendants.  However,
Rule 4(d) allows for waiver of service of process at the
plaintiff's request.  Here, the nine named defendants waived
service after they were personally served with the summons and
complaint.  Furthermore, the form itself specifically states that
the signer "will retain all defenses or objections . . . except
for objections based on a defect in . . . the service of the
summons."  (See, e.g., Womble waiver [38].)  Even though these

- 16 -

waivers were filed outside of the period within which service
should have been completed, they represent an agreement to
refrain from raising an objection to service of process. <u>Cf.</u> <u>Oil</u>
<u>Express Nat'l, Inc. v. Thomas P.</u>, No. 96C4816, 1996 U.S. Dist.
LEXIS 16938, at *7 (N.D. Ill. Nov. 13, 1996) (noting that
although after the plaintiff failed to effect service of process
the plaintiff had sent waivers of service to defendants, because
the waivers were not received or signed by defendants the
insufficient service of process had not been cured); <u>Cross v.</u>
<u>City of Chicago</u>, No. 99C3443, 2001 U.S. Dist. LEXIS 21476, at *5
(N.D. Ill. Dec. 21, 2001) (where the plaintiff sued officers in
their individual capacities and served the complaint and summons
on the defendants' employer, waiver letters later mailed to the
defendants that were unsigned and not returned did not excuse
service). Defendants' challenge to service, then, will be
rejected.

<u>CONCLUSION AND ORDER</u>

If Womble and Wilson fabricated reports of smelling
marijuana smoke near Nesbitt's workstation, they caused Nesbitt
to be subjected to a search not based upon reasonable suspicion,
in violation of his clearly established Fourth Amendment right.
He has adequately pled facts to defeat the claim of qualified
immunity by Womble and Wilson, and the motion to dismiss as to
these two defendants will be denied. However, because Nesbitt

- 17 -

has failed to plead facts showing that the remaining defendants violated his Fourth Amendment right or are the proper defendants under his Fifth Amendment claim, the remaining defendants' motion to dismiss will be granted.  The CSRA does not supplant <u>Bivens</u> as the exclusive source of a remedy for the violation that Nesbitt has pled.  Finally, the defendants waived their right to object to service of process, and their motion to dismiss under Rule 12(b)(5) will be denied.  Therefore, it is hereby

ORDERED that defendants' motion to dismiss [16] be, and hereby is, GRANTED in part and DENIED in part.  The complaint is DISMISSED against all defendants except Womble and Wilson.  The Fifth Amendment claim is DISMISSED.  The motion is denied in all other respects.  It is further

ORDERED that the parties file by January 5, 2007 an updated report under Local Civil Rule 16.3.

SIGNED this 27th day of November, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge